Robert L. Starr (183052)
robert@starrlaw.com
Adam M. Rose (210880)
adam@starrlaw.com
Theodore R. Tang (313294)
theodore@starrlaw.com
**THE LAW OFFICE OF ROBERT L. STARR, APC**
23901 Calabasas Road, STE #2072
Calabasas, CA 91302
Telephone: (818) 225-9040
Facsimile: (818) 225-9042

Attorneys for Plaintiff
Jaylene Beligan

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAYLENE BELIGAN,<br><br>        Plaintiff,<br><br>        v.<br><br>MERCEDES-BENZ USA, LLC, and<br>DOES 1 through 10,<br><br>        Defendants. | Case No.: 8:22-cv-2035-DFM<br><br>**FIRST AMENDED COMPLAINT** |

Plaintiff Jaylene Beligan hereby states her amended causes of action against Defendants Mercedes-Benz USA, LLC, and Does 1 to 100, as follows:

### PARTIES

1)  Plaintiff Jaylene Beligan ("Plaintiff") is a resident of Los Angeles County, State of California, and was at all times relevant residing therein. Plaintiff is the owner of the Subject Vehicle, specifically, a 2013 Mercedes C300 Turbo, VIN # 55SWF4JBXJU240237 (the "Subject Vehicle").

2)  Defendant Mercedes-Benz USA ("MBUSA") is a Delaware limited liability company with its principal place of business located in Sandy Springs, Georgia.

3)  All acts and omissions of MBUSA's employees, agents, associates, partners,

parents, or subsidiaries as alleged herein occurred while they were acting within the course and scope of their duties and MBUSA is therefore responsible to Plaintiff and others under the doctrine of Respondeat Superior and/or other doctrines.

4)    Plaintiff is unaware of the true names or capacities of the Defendants sued herein as DOES 1 through 10, inclusive ("Doe Defendants"), and therefore sues said Doe Defendants by such fictitious names. Plaintiff will seek leave of this Court to amend this Complaint to insert the true names and capacities of such Doe Defendants when such information has been obtained. Plaintiff is informed and believes, and based on such information and belief alleges, that each of the fictitiously named Doe Defendants has participated in some way in the wrongful acts and omissions alleged below and is liable to Plaintiff for damages and other relief to which Plaintiff is entitled.

## JURISDICTION AND VENUE

5)    Defendant has removed this case to federal court.

## INTRODUCTORY ALLEGATIONS

6)    This matter arises from Defendant MBUSA's willful failure to tender a statutorily compliant emissions warranty for the Subject Vehicle.

7)    The relevant statues at issue involve California Code of Regulation ("CCR"), Tit. 13, §§ 2035 and 2037. These statutes require all vehicle manufacturers to provide a "statutorily compliant" general emissions warranty in conjunction with the sale of any new motor vehicle in the State of California.[1]

8)    In order for a manufacturers' California Emissions Warranty to be "statutorily compliant," the emissions warranty must provide coverage for a period of three (3) years or 50,000 miles for defects "which cause the failure of a **warranted part** [or] which would cause the vehicle's on-board diagnostic **malfunction indicator light to**

---

[1] As used herein "California Emissions Warranty" refers to the extended emissions warranty regulations set forth in 13 CCR § 2035 *et. seq*., as well as its identical federal analogue under Section 177.

*illuminate*[.]" [13 CCR § 2037(b)(2) (emphasis added)].

9)   As defined by the Regulations, a "warranted part" includes any part whose malfunction causes the vehicle's Malfunction Indicator Light ("MIL") to illuminate. Importantly, if a defective component causes the MIL to illuminate, the California Code of Regulations ("CCR") still categorizes the component as a "warranted part" even though the primary function of the defective component is not directly related to emissions control. [13 CCR § 2035(c)(2)(B)].

10) However, when the part is considered to be a "high-priced warranted part," the manufacturer must extend the emissions warranty from three years/50,000-miles, to seven years/70,000-miles. [*Id*. at § 2037(b)(3)].

11) A "high priced warranted part" is defined as a "warranted part" whose individual replacement cost at the time of certification exceeds the annual average nationwide urban Consumer Price Index ("CPI") for the calendar year two years prior to the model-year for which the cost limit is being calculated. [*Id*. at § 2037(c)(3)].

12) Relevant to the instant case is the Subject Vehicle's engine piston No. 1.

13) Pursuant to 13 CCR § 2037(b)(2), an engine piston has been legislatively categorized as an "emissions-related" part because a defect or failure of the engine piston will cause the "check engine" light to illuminate; will cause the vehicle to fail a smog check; and will cause an increase in "regulated" greenhouse gas emissions.

14) Importantly, because the low compression cylinder is an "emissions-related" part "which affects regulated emissions," it must also necessarily be classified as a "warranted part" pursuant to 13 CCR § 2035(c)(2)(B).

15) As alleged in greater detail below, not only is the engine piston a "warranted part," but it is also a "high-priced" warranted part whose repair or replacement is statutorily entitled to an extended 7 year/70,000-mile warranty.

16) Yet, in an effort to minimize its warranty costs, Defendant MBUSA has unilaterally and unlawfully disregarded the foregoing statutes by limiting the parts it

designates as "high-priced" emission parts covered under the extended 7 year/70,000-mile statutory emission warranty. These parts include, but are not limited to, the engine piston.

17) In other words, in order to minimize its warranty exposure, MBUSA limits the parts that should be covered under its statutorily mandated emissions warranty, and when these parts go bad, instead of covering these repairs under warranty as required by statute, MBUSA refuses to provide coverage, and sticks the consumer with the bill.

18) As a result of its systematic refusal to pay for repairs associated with a warrantable defects entitled to coverage under the California Emissions Warranty, MBUSA has unlawfully required Plaintiff MBUSA, and thousands of other consumers, to pay out-of-pocket for repairs which should have been conducted free of charge under warranty.

19) Plaintiff seeks redress for MBUSA's egregious violations of California law based on the causes of action set forth below. In addition, Plaintiff seeks an order enjoining MBUSA's conduct; directing it to inform the public that repair and/or replacement of the engine piston is covered under warranty; directing MBUSA to provide warranty coverage for the repair and replacement of the Subject Vehicle's engine pistons; compensatory damages; restitution; and punitive damages.

## FACTUAL ALLEGATIONS

20) In order to understand the widespread effect of MBUSA's unlawful conduct, it is important to provide a detailed explanation of the relevant statutory provisions at issue.

21)  In September 1990, and pursuant to its broad authority to regulate and reduce vehicle emissions under Health and Safety Code §§ 43013(a) and 43205, the California Air Resource Board ("CARB") submitted, and the Legislature adopted, California Code of Regulations § 2035, *et seq*. Officially, the sections of the CCRs is entitled "Emission Control System Warranty Requirements for 1990 and Subsequent

1   Model Year Passenger Cars, Light-Trucks, and Medium-Duty Vehicles." As

2   mentioned in footnote 1, for the purposes of brevity, Plaintiff shall refer to CCR §

3   2035, *et seq*. as the "California Emissions Warranty."

4   22)  As alleged in ¶ 11, *supra*, 13 CCR § 2037(b)(2) requires all manufacturers to

5   provide warranty coverage for a period of 3 years/50,000-miles for all "warranted

6   parts." A component is classified as a "warranted part" if a defect in that part "would

7   cause the vehicle's on-board diagnostic malfunction indicator light to illuminate[.]"

8   [13 CCR § 2037(b)(2)]. Importantly, this "warranted part" characterization is not

9   altered by the fact that the primary function of the defective component may not be

10  directly related to emissions control. [*Id*. at § 2035(c)(2)(B)].

11  23)  The reason why the defective component need not directly relate to emissions

12  control—while still retaining its "warranted part" characterization—is because a

13  defect in that particular component causes a chain reaction which results in a

14  malfunction in the vehicle's on-board diagnostic emissions system ("OBDII") which,

15  in turn, causes the MIL to illuminate. When the MIL illuminates, it necessarily

16  indicates that there is an emissions-related problem.

17  24)  The MIL is a light located on the driver's side instrument panel which, when

18  illuminated, is amber in color and displays either a "Check Engine/Powertrain"

19  message; a "Service Engine/Powertrain Soon" message; or the International

20  Standards Organization "engine symbol."

21  25)  The MIL serves to notify the driver of detected malfunctions in the vehicle's

22  OBDII system. In layman's terms, this means that when the MIL is illuminated, an

23  emissions-related defect has been detected in the vehicle. However, the MIL will not

24  illuminate unless the vehicle's OBDII has detected a defect which causes an increase

25  in regulated emissions.

26  26)  Having dispensed with the definition of a "warranted part," we now turn to the

27  definition of "high-priced" warranted parts.

28  27)  Pursuant to 13 CCR § 2037(c)(3), if an emissions-related component is

determined to be "high-priced," then the manufacturer is statutorily required to extend its warranty from 3-years/50,000-miles, to 7-years/70,000 miles.

28) A "high-priced warranted part" is defined as a warranted part whose individual replacement cost at the time of certification exceeds the cost limit established by the annual average nationwide urban CPI for the calendar year two years prior to the model-year for which the cost limit is being calculated. [13 CCR § 2037(c)(3)].

29) Thus, to determine the cost limit for a high-priced warranted part in 2015, the calculation would need to utilize the annual average nationwide urban CPI for 2013.

30) In calculating whether a particular part's individual replacement cost at the time of certification exceeds the cost limit, "the replacement cost shall be the retail cost to a vehicle owner and include the cost of the part, labor, and standard diagnosis." [13 CCR § 2037(c)(1)]. This calculation must utilize a price-point as would be charged "in the highest-cost metropolitan area of California." [13 CCR § 2037(c)(2)].

31) This cost limit shall be calculated using the following equation:

$$\text{Cost limit } \{n)\} = \$300 \times (CPI\{n-2]\}/ \ 118.3.$$

32) Cost limit {n} is the cost limit for the applicable model year of the vehicle rounded to the nearest ten dollars.

33) If, upon conducting this calculation, the price of repair/replacement exceeds the CPI cost limit, the part is a "high-priced" warranted part, and the manufacturer is statutorily required to extend warranty coverage for the part's repair or replacement from three years/50,000-miles, to seven years/70,000-miles. [13 CCR § 2037(b)(3)].

## THE ENGINE PISTON IS AN "EMISSIONS-RELATED" PARTS

34) The Subject Vehicle is equipped with what is known as an onboard diagnostic system or OBDII. The system uses sensors to gather data which is evaluated using OBDII fault code logic. If the OBDII logic determines that the data it receives is outside of an acceptable range, a fault code is triggered which identifies the precise defect causing the increase in regulated emissions.

35)  When MBUSA seeks certification of vehicles for distribution in California, MBUSA is required, pursuant to 13 CCR § 1968.2, to provide CARB with all of MBUSA's OBDII fault codes and the corresponding logic.

36)  Plaintiff is informed and believes, and based on such information and belief alleges, that MBUSA has submitted to CARB what are known as "OBDII Summary Tables" which contain all of the triggering OBDII fault codes. These "Summary Tables" are submitted by MBUSA for every single one of their model vehicles that are certified for sale in California.

37)  The Summary Tables MBUSA annually submits to CARB are intended to identify which vehicle components are monitored by the OBDII, as well as the acceptable ranges relating to the data gathered.

38)  The fault codes which trigger the OBDII system are then used by technicians to determine precisely which part needs to be repaired/replaced. On the other hand, the MIL is used to alert the driver of a defect. As previously mentioned, any defect that triggers the MIL, or which causes the activation an emissions fault codes identified by MBUSA in the OBDII Summary Tables, is an emissions-related defect.

39)  The OBDII Summary Tables, among other documents, identify the parts that have not already been identified as emissions-related parts by MBUSA in its warranty books but which, when defective, can or do trigger an emissions fault code and result in the illumination of the MIL.

40)  Therefore, under the California emissions warranty, MBUSA is required to provide coverage for the repair/replacement of any defect that triggers a fault code identified by MBUSA in its OBDII Summary Tables, or which should have been identified in the OBDII Summary Tables, because such defects affect regulated emissions.

41)  Relevant to the instant case is that a defect in the engine piston will trigger emission fault codes in the OBDII system and will also cause the MIL to illuminate.

42)  Furthermore, defects in the engine piston will cause the illumination of the

1  check engine light.

2  43)  The foregoing framework and analysis addresses and precludes any potential

3  "slippery slope" argument that every component on a motor vehicle could potentially

4  be classified as "emissions-related." This litigation is not dependent on the assertion

5  that "emissions-related parts" are defined as every part in the OBDII system. Rather,

6  this litigation asserts that there should be California Emissions Warranty coverage

7  for the parts, components, or systems whose defects trigger fault codes (1) which

8  were identified or should have been identified in the OBDII Summary Tables; (2)

9  which cause the illumination of the MIL; or (3) which cause the vehicle to fail a

10  California smog check.

11  44)  The engine piston installed in the Subject Vehicles meets all of these

12  requirements.

13  ## THE ENGINE PISTON IS A "WARRANTED PART"

14  45)  The engine piston is a "warranted part" pursuant to 13 CCR § 2037(b)(2)

15  because a defect or failure in the engine piston will cause the "MIL" light to

16  illuminate; will cause the vehicle to fail a smog check; and will cause an increase in

17  "regulated" greenhouse gas emissions.

18  46)  To provide further detail, the engine piston affects regulated emissions as

19  follows: In order for the engine piston to even come into play, fuel is first pumped

20  from the fuel tank by the fuel pump into the fuel lines and then, into the high-

21  pressure fuel pump. The high-pressure fuel pump compresses the fuel and feeds it

22  into the fuel injector. The fuel injector shoots the fuel into the engine's cylinders

23  where the fuel mixes with air. The engine's pistons then slide upwards where they

24  snugly fit into the engine's cylinders and compress this air/gas mixture even further.

25  Once the pistons slide up into the cylinder, a spark plug ignites the air/gas mixture,

26  which causes a tiny explosion. The energy from this tiny explosion inside the

27  cylinder then violently thrusts the piston downwards, which in turn powers the

28  crankshaft. The crankshaft ultimately spins the tires, which allows the vehicle to

move forward, and the spent fuel is expelled through the vehicle's exhaust.

47) A defective engine piston, however, will cause major performance and drivability issues as a result of a loss of compression, gas leakage from the combustion chamber, and lubrication loss. When the pistons are damaged, they do not fire at an effective or efficient rate—thus causing an increase in regulated emissions, as well as significantly lowering gas mileage. Accordingly, the engine piston is a "warranted part" as defined by 13 CCR § 2037(b)(2) because a defect or failure in the engine piston will cause an increase in regulated emissions.

48) The engine piston can alternatively be classified as a "warranted part" because a defect in the engine piston will cause the MIL to illuminate. As previously alleged, the MIL only illuminates when the OBDII system has detected a tangible increase in regulated emissions. The OBDII uses sensors to gather data which is evaluated using the OBDII's fault code logic. If the OBDII logic determines that the data is outside of an acceptable range, a fault code is triggered—which means that the OBDII has identified a defect which increases regulated emissions.

49) Finally, and as alleged above, a defect in the engine piston causes both (1) an increase in regulated emissions; and (2) illumination of the MIL. But in the presence of an increase in regulated emissions or the illumination of the MIL, the vehicle will be completely incapable of passing a California smog check. Practically speaking, when the car fails a smog check, the car no longer can be legally driven on the road.

### THE ENGINE PISTON IS A "HIGH-PRICED" WARRANTED PART

50) A "high priced warranted part" is defined as a "warranted part" whose individual replacement cost at the time of certification exceeds the annual average nationwide urban Consumer Price Index ("CPI") for the calendar year two years prior to the model-year for which the cost limit is being calculated.

51) In order to establish that the engine piston should be designated as a "high-priced" warranted part, Plaintiff must first establish that the part is "emissions related." Plaintiff has established the "emissions related" nature of the engine piston

in ¶¶ 37-47, *supra*. However, to briefly recap, the evidence is incontrovertible that the engine piston is a warranted part because it satisfies not one, not two, but all three separate regulatory prerequisites for being classified as a "warranted part."

52)  Specifically, the engine piston is a "warranted part" because a defect in this component (i) will cause the MIL to illuminate; (ii) will cause the vehicle to fail a smog check; and (iii) will cause an increase in "regulated" greenhouse gas emissions.

53)  Having dispensed with the issue of whether the engine piston is a "warranted" emissions part, Plaintiff now turns to addressing why the engine piston is also a "high priced" warranted emissions part.

54)  On August 21, 2017, CARB published Manufacturers' Advisory Correspondence 2017-03 (MAC 2017). The subject of MAC 2017 was entitled "Cost Limit for High-Priced Warranted Parts for New 2018 Model-Year (MY) Passenger Cars (PC), Light-Duty Trucks (LDT), Medium-Duty Vehicles and Engines Used in These Vehicles."

55)  Relevant here is that MAC 2017 "identifies the cost limit for high-priced warranted parts of 2018 passenger cars." Because the Subject Vehicle is a passenger car, MAC 2017 establishes the cost limit for high-priced warranted parts for the Subject Vehicle is $610.

56)  Pursuant to 13 CCR §2037(c) or §2435(b), as applicable, the cost limit for high-priced warranted parts for model year 2018 passenger cars is calculated using the annual average nationwide urban CPI for 2016—the calendar year two years prior to the model-year for which the cost limit is being calculated. This CPI is published by the U.S. Bureau of Labor Statistics. When rounded to the nearest ten dollars, the model year 2017 cost limit is $ 610, as calculated below:

$$\text{MY2018 Cost Limit} = \$300 \times (\text{calendar 2016 CPI/baseline CPI})$$
$$= \$300 \times (240.0 / 118.3)$$
$$= \$610$$

57)  The $610 cost limit accounts for the total cost to diagnose and repair/replace a

warranted part. When the cost to diagnose and repair/replace a warranted part exceeds $610, then the warranted part's repair/replacement, by operation of law, must be provided warranty coverage for 7-years/70,000-miles—whichever occurs first.

58)   Further, under a section entitled "High-Priced Warranted Parts Cost Documentation in the Applications for Certification" the MAC makes explicit that "[m]anufacturers must submit in their applications for certification the documentation used to identify the high-priced warranted parts in accordance with 13 CCR §2037(c)(3), §2435(b)…[T]he documentation shall include all emission-related parts costing more than $600…(i.e., calculated cost limit minus $100) to replace…This documentation shall substantiate that the list includes all potential high-priced parts. The documentation shall include the estimated retail parts costs, labor rates in dollars per hour, and the labor hours necessary to replace the parts including standard diagnosis. If the labor hours being charged for customer-pay repairs are different from those specified by the manufacturer for warranty repairs, the manufacturer shall substantiate the labor hours specified. All applications and required documentation (i.e., high-priced warranted parts list, potential high-priced parts, and cost calculations) must be submitted using the California Air Resources Board's (CARB) Document Management System."

59)   In this case, the replacement cost of the engine piston—which includes parts and labor—exceeded the applicable cost limit of $610 because the replacement cost for the engine piston was $610.

60)   Plaintiff is informed and believes, and based on such information and belief alleges, that when using the methodology required by the California Code of Regulations to calculate the cost of replacing the engine piston, the cost is always greater than $610. Thus, the cost of replacing the engine piston installed in the Subject Vehicle always exceeds the cost limit, and the engine piston in the Subject Vehicle is therefore a "high-priced" part.

61)  In general, MBUSA has been using an incorrect standard to determine if emissions-related components—such as the engine piston—is a warranted part or a high-priced warranted part.

62)  By using an incorrect methodology, MBUSA failed to provide a 7-year 70,000-mile warranty for the engine piston as statutorily required, and MBUSA has thus violated the UCL and the Consumer Legal Remedies Act ("CLRA").

**ALLEGATIONS RELATED TO THE UNLAWFUL NATURE OF MBUSA'S CONDUCT**

63)  At all times relevant, for each new motor vehicle intended to be distributed by MBUSA in the State of California, at the time of distribution, MBUSA has purported to accurately notify CARB of the parts which should be covered as emissions-related parts, also known as "warranted parts."

64)  Furthermore, for each new motor vehicle intended to be distributed by MBUSA in the State of California MBUSA has purported to accurately notify CARB of the parts which should be covered under both the 3-year/50,000-miles and 7-year/70,000-mile California emissions warranties.

65)  For each new vehicle intended to be distributed by MBUSA in the State of California, at the time of distribution, MBUSA has purported to provide accurate written warranty documents accompanying the sale of its vehicles—including that these warranty documents accurately identify all of the vehicle's parts that are covered under the 3-year/50,000-mile California emissions warranty, as well as the extended 7-year/70,000-mile California emissions warranty.

66)  MBUSA has engaged in a systematic business practice where, at the time of sale of its motor vehicles and thereafter, it intentionally omits from its warranty booklets, and in resources provided to its dealerships, a significant number of parts which should be identified as emissions related warranty parts covered under the 3-year/50,000-mile or 7-year/70,000-mile statutory emissions warranty.

67)  To be sure, MBUSA does properly classify some of its parts as being covered

under either a 3-year/50,000-mile or 7-year/70,000-mile warranty, but it does not fully disclose or classify all of the parts which are entitled to this statutory coverage.

68)   Consequently, when consumers present their MBUSA vehicles for repair at an authorized repair facility, MBUSA fails to provide coverage under the 3-year/50,000-mile California emissions warranty or the 7-year/70,000-mile extended statutory emissions warranty for repairs which should have been covered under these emissions warranties.

69)   California consumers have thus been forced to pay out-of-pocket for repairs which, by operation of law, should have properly been paid for by MBUSA.

70)   MBUSA engages in this misconduct in order to reduce the amount of money that it has to pay out on warranty-related claims and repairs.

71)   If MBUSA had simply identified all of the warranted parts and high-priced warranted parts that should be correctly identified as such, then MBUSA dealerships would have unquestionably conducted repairs for these parts under warranty, and Plaintiff would never have been injured.

72)   MBUSA's failure and refusal to properly identify the parts which should have been classified as warranted parts and "high-priced" warranted parts is clear violation California Business and Professions Code section 17200, et seq. (the "UCL") and is intended to minimize the amount of money that MBUSA has to pay out in warranty claims.

73)   Plaintiff has suffered damage and lost money or property as a result of MBUSA's wrongful conduct.

74)   Plaintiff's theory does not depend on the premise that CARB was deceived by the information that MBUSA submitted, and Plaintiff is not accusing CARB of mismanagement or blaming CARB for MBUSA's inaccuracy. MBUSA alone is responsible for selecting and identifying to CARB the parts that MBUSA has unilaterally identified as warranted parts and "high-cost emissions warranty parts" as a prerequisite to its application for vehicle certification.

**FACTUAL ALLEGATIONS RELATED TO PLAINTIFF**

75)  Plaintiff is the owner of the Subject Vehicle.

76)  At the time Plaintiff purchased the Subject Vehicle, it was accompanied by an implied California statutory emissions warranty.

77)  On May 6, 2022 at 68,151 miles, Plaintiff took the Subject Vehicle to Mercedes-Benz of Foothill Ranch ("Foothill Ranch") because the MIL warning light was illuminated; the vehicle was shaking, the RPMs were rising; and the vehicle was experiencing a significant decrease in power. MBUSA is a factory authorized repair facility and is one of the locations that MBUSA consumers are supposed to take their vehicles for repairs covered by the statutory emissions warranty.

78)  In this case, Foothill Ranch performed an inspection and discovered that the engine piston was defective. Specifically, it was found that the engine piston was cracked. However, Foothill Ranch refused to provide warranty coverage for the estimated cost of the engine piston repair was $15,052.84, and the cost of the diagnosis was $299.95. Plaintiff ended up paying some but not all of the cost of the repairs. The entire cost of the repairs should have been covered by MBUSA.

79)  In any event, the cost of the diagnosis and repairs relating to the engine piston should have been covered and paid for by MBUSA under the 7-year/70,000-mile California emissions warranty. This is because, pursuant to 13 CCR § 2037(c), the engine piston should have been identified as a high-priced emissions part, and the parts relating to that repair should have been covered under section 2037(c).

80)  Plaintiff is informed and believes, and based on such information and belief alleges, that MBUSA's failure to classify the engine piston as a covered part under the California emissions warranty was an intentional omission by MBUSA designed to limit its warranty exposure.

81)  Plaintiff is informed and believes, and based on such information and belief alleges, that Plaintiff's experience is just one of many examples of MBUSA's scheme to avoid providing a true and comprehensive list of all parts which should be

1   covered under either a 3-year/50,000 mile or 7-year/70,000-mile California emission

2   warranty.

3     82)  The details of how MBUSA actually applied the CCR cost limit formula with

4   respect to the engine piston are exclusively within MBUSA's possession—as is the

5   information regarding what other parts MBUSA improperly omitted from its list of

6   parts entitled to coverage under the California emissions warranty.

7     83)  As evidenced by Plaintiff's own experience, when MBUSA vehicles are

8   presented to MBUSA dealerships for repairs which should be covered under the 3-

9   year/50,000-mile or 7-year/70,000-mile California emissions warranty, MBUSA

10  refuses to provide coverage under the emissions warranty.

11    84)  In this case, Plaintiff presented the Subject Vehicle to a MBUSA authorized

12  repair facility for repairs prior to the end of the 7-year/70,000-mile California

13  emissions warranty period for high-priced emissions parts. But instead of conducting

14  these repairs under warranty as required by California law, MBUSA intentionally

15  and unlawfully denied warranty coverage for the engine piston—a "high-priced"

16  emission part which should have been covered under the 7-year/70,000-mile

17  California emissions warranty.

18    85)  The reason that Plaintiff was charged for said repairs was not the result of an

19  individual oversight by Foothill Ranch or MBUSA in failing to identify the repairs as

20  being covered under the 7-year/70-mile California emissions warranty. Instead,

21  Plaintiff was denied warranty coverage because MBUSA, in a systematic and

22  organized attempt to increase profit, deceptively omitted from warranty booklets and

23  internal dealership literature those parts which should have been identified as "high-

24  priced" warranted parts entitled to extended statutory coverage.

25    86)  Pursuant to 13 CCR § 2037(c)(1)(B), MBUSA is required by law to identify

26  "high-priced warranted parts…which have an individual replacement cost at the time

27  of certification exceeding the cost limit defined in section (c)(3)."

28    87)  MBUSA intentionally failed to identify all said components in order to

increase profit vis-à-vis reducing the amount of money it spends on warranty-related repairs.

88)  If MBUSA had complied with California law and properly identified all the parts which should have been identified as "high priced," then MBUSA dealerships would have properly provided warranty coverage for said high-priced warranted parts, and Plaintiff would never have paid out-of-pocket for repairs which were covered under warranty.

89)  Furthermore, MBUSA's failure to tender extended statutory warranty coverage for repair/replacement of the engine piston has resulted in Plaintiff paying more for the Subject Vehicle than it was actually worth. More specifically, Plaintiff paid for a vehicle that purported to provide warranty coverage for all "warranted parts" and "high-priced" warranted parts—including but not limited to the engine piston. However, MBUSA did not include these parts as being covered under the California emissions warranty.

90)  MBUSA's refusal to articulate in its written warranty booklets that the engine piston was covered under the California emissions warranty directly resulted in MBUSA's unjust enrichment and a tangible detriment to Plaintiff because the cost of a compliant warranty is "priced in" to the cost of the vehicle itself. The warranty thus possesses a tangible and ascertainable economic value to Plaintiff.

91)  Plaintiff was supposed to be provided with warranty coverage in conformity with MBUSA's California emissions warranty obligations but were never provided such coverage. Instead, MBUSA provided a deficient warranty which does not cover the engine piston under the California emissions warranty—even though MBUSA was lawfully obligated to provide coverage for the engine piston.

92)  Accordingly, the non-compliant warranty provides Plaintiff with tangibly less coverage than she paid for. Not only is Plaintiff not getting what she paid for, but because MBUSA has wrongfully refused to extend coverage for repair/replacement of these parts, Plaintiff has been required to incur the additional expense of paying

out-of-pocket for repairs which should have been fully covered under warranty. What makes MBUSA's conduct so egregious is that Plaintiff, in purchasing the Subject Vehicle, necessarily paid for a vehicle which included statutory warranty coverage, but what she actually got is a car without such coverage.

93)   Plaintiff was entitled to a compliant California Emissions Warranty, but was provided with a deficient warranty. As a result, MBUSA has been unjustly enriched by providing a deficient warranty which reduced MBUSA's costs, and Plaintiff has been damaged by not receiving the warranty that she was legally entitled to receive.

94)   In fact, irrespective of whether repairs were performed to the engine piston, Plaintiff was still sold a car which was worth less than what she actually paid for it by virtue of MBUSA's systematic failure to tender coverage under a statutory warranty which covers repair or replacement of the engine piston.

95)   MBUSA's conduct violates California Business and Professions Code section 17200, et seq. (the "UCL") and the CLRA.

96)   Plaintiff and others have suffered damage as a result of MBUSA's wrongful conduct as alleged herein and therefore have standing.

## FIRST CAUSE OF ACTION

### VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200

### (Against MBUSA and Doe Defendants)

97)   Plaintiff re-alleges and incorporates by reference each and every allegation contained in the paragraphs above.

98)   California Business and Professions Code § 17200 prohibits acts of unfair competition, including any "unlawful, unfair, or fraudulent business act or practice" and "unfair, deceptive, untrue, or misleading advertising."

99)   As alleged herein, MBUSA has engaged in unlawful, fraudulent, and unfair business practices.

100)  The UCL imposes strict liability. Plaintiff need not prove that MBUSA intentionally or negligently engaged in unlawful or unfair business practices – only

that such practices occurred.

101) Plaintiff and MBUSA are all considered "persons" as that term is defined in Business and Professions Code § 17201.

102) MBUSA violated the UCL by knowingly and intentionally omitting from its warranty booklets, concealing from CARB, concealing from Plaintiff, and refusing to provide coverage for those parts which should have been listed as covered under California's 3-year or 50,000-miles and 7-years or 70,000-miles statutory emissions warranty. MBUSA knew exactly which parts needed to be listed as covered under California's emissions warranty but chose to purposely omit those parts in an attempt to maximize profit by limiting the number of parts whose repair/replacement would be covered under warranty.

103) MBUSA's unlawful, fraudulent, and unfair business acts and practices caused Plaintiff to suffer damage.

104) MBUSA's unlawful, fraudulent, and unfair conduct has also caused Plaintiff to pay out-of-pocket for repairs under false pretenses because these repairs should have been covered under warranty.

105) As a direct and proximate result of MBUSA's acts and practices in violation of the UCL, Plaintiff has suffered injury in fact and lost money or property as set forth above and will continue to do so.

106) As a direct and proximate result of MBUSA's acts and practices in violation of the UCL, MBUSA has been unjustly enriched by providing a warranty that was worth less than the value of the warranty had the warranty been compliant with MBUSA's regulatory obligations.

### Unfair Prong

107) An act or act or practice is "unfair" if the consumer injury is substantial; is not outweighed by any countervailing benefits to Plaintiff or to competition; and is not an injury the Plaintiff could reasonably have avoided. An act or practice also is unfair if it offends an established public policy or is immoral, unethical, oppressive,

1   unscrupulous, or substantially injurious. An act or practice also is unfair if Plaintiff's

2   claims are "tethered" to specific constitutional, statutory or regulatory provisions.

3    108) MBUSA's conduct, as alleged herein, constitutes an "unfair" business

4   practice.

5    109) MBUSA's business practices are unfair because they offend established public

6   policy and/or are immoral, unethical, oppressive, unscrupulous, and/or substantially

7   injurious to the Plaintiff

8    110) As alleged above, MBUSA engages and has engaged in a systematic business

9   practice of failing to identify for consumers and its factory authorized repair facilities

10  that the engine piston installed in the Subject Vehicles is covered by the California

11  Emissions Warranty. MBUSA does this in an effort to reduce the amount of money

12  that it spends on warranty-related repairs knowing that it would be very difficult—if

13  not impossible—for most consumers to discover this unlawful conduct. If MBUSA

14  complied with California law and properly identified that the engine piston in the

15  Subject Vehicle should be identified as covered under an extended statutory

16  emissions warranty, then MBUSA dealerships would properly provide warranty

17  coverage for said parts.

18   111) Additionally, conduct is "unfair" because it is tethered to a legislatively

19  declared policy of requiring MBUSA to categorize specific parts as "high-priced

20  warranted parts" and issue a complaint warranty. [See, 13 CCR § 2037]. As stated

21  herein, MBUSA failed to comply with these obligations.

22   112) Notwithstanding its statutory duty, MBUSA failed to classify that the engine

23  piston and other parts are "high-priced warranted parts," and further failed to provide

24  a 7-years or 70,000-miless warranty for the engine piston and other parts for the sole

25  purpose of improperly limiting its warranty claims—without regard to the fact that

26  consumers are being provided with a warranty that is less valuable than the warranty

27  they are legally entitled to at the time of purchase or lease of their vehicle.

28   113) Plaintiff has been wrongfully denied warranty coverage and has suffered

injury in fact and a loss of money or property as a result of MBUSA's unfair business acts and practices alleged herein.

114) Because the engine piston and other parts should have been classified as "high-priced warranted parts," MBUSA's business practice of omitting these parts from its warranty booklet, as well as denying extended warranty coverage for repair/replacement of these parts, is a violation of 13 CCR § 2037. For this reason, MBUSA's "unfair" conduct is tethered to a specific statutory provision.

115) As a result of its violation of this statute, Plaintiff has wrongfully been denied warranty coverage at service centers throughout California and has suffered injury in fact and a loss of money or property as a result of MBUSA's unfair business acts and practices.

116) All of the acts and practices of MBUSA as described in this complaint constitute "unfair" business acts and practices. A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims. Plaintiff has suffered injury in fact and a loss of money or property as a result of MBUSA's unfair business acts and practices as set forth herein.

117) As a direct and proximate result of MBUSA's acts and practices in violation of the UCL, Plaintiff has suffered damages.

118) MBUSA's conduct does not benefit Plaintiff or competition. Plaintiff could have not reasonably avoided the injury suffered or the injury that will be suffered. MBUSA's conduct only benefits MBUSA itself.

119) The gravity of the consequences of MBUSA's conduct as described above outweighs the justification, motive, or reason therefor, is immoral, unethical, and unscrupulous, and offends established public policy that is tethered to legislatively declared policies as set forth in the laws detailed above, or is substantially injurious to the public, for the reasons set forth above.

120) MBUSA could have and should have furthered its legitimate business interests

1  by publicly disclosing those parts which were entitled to coverage under the

2  California emissions warranty.

3  121) MBUSA could have and should have furthered its legitimate business interests

4  by including in its warranty booklets those parts which were entitled to coverage

5  under the California emissions warranty.

6  122) To the extent that any definition of "unfair" requires a balancing test or

7  weighing various factors, such an inquiry is fact intensive and requires a full factual

8  record as to MBUSA's justification and motives for its conduct, and as to the impact

9  of MBUSA's conduct on Plaintiff.

10  123) MBUSA's acts of unfair competition as set forth above present a continuing

11  threat and will persist and continue to do so unless and until this Court issues

12  appropriate injunctive relief. Plaintiff also seeks attorneys' fees and costs.

13  **Deceptive Prong**

14  124) MBUSA has engaged in a systematic business practice of selling vehicles

15  while actively concealing those vehicle parts which are entitled to coverage under the

16  California emissions warranty as alleged herein.

17  125) MBUSA's misleading information and concealment as alleged herein was an

18  unlawful business practice and was specifically designed to induce Plaintiff into

19  purchasing the Subject Vehicles under false pretenses.

20  126) MBUSA's misleading information and concealment as alleged herein was an

21  unlawful business practice and was specifically designed to induce Plaintiff into

22  paying for repairs under false pretenses.

23  127) Said conduct is likely to deceive an ordinary consumer because, as alleged

24  herein, MBUSA has a statutory duty to disclose those parts which are entitled to

25  coverage under the California emissions warranty.

26  128) MBUSA is and was under a duty to not mislead and deceive Plaintiff because

27  MBUSA is and was in a superior position to know the true state of facts.

28  129) The facts concealed and not disclosed by MBUSA are material. Had Plaintiff

1  known the true facts and had MBUSA been truthful, Plaintiff would not have been

2  damaged to the same extent and would have been able to avoid much of the damages

3  she now seeks to recoup through this lawsuit.

4  130) The facts concealed are, by their very nature, material facts that a reasonable

5  person would have considered when deciding whether or not to purchase a vehicle or

6  pay for repairs. Had Plaintiff known that MBUSA refuses to provide warranty

7  coverage for parts which are statutorily entitled to warranty coverage, she would not

8  have purchased or leased Subject Vehicle, or would have paid less to do so.

9  131) Had Plaintiff known that MBUSA was required to provide warranty coverage

10  for parts which were unlawfully omitted from its warranty booklet, she would not

11  have paid for these repairs.

12  132) MBUSA has, by its concealment and false statements, engaged in unfair

13  competition and unlawful, unfair, and fraudulent business practices.

14  133) MBUSA's acts of unlawful competition as set forth above present a continuing

15  threat and will persist and continue to do so unless and until this Court issues

16  appropriate injunctive relief. Plaintiff also seeks attorneys' fees and costs.

17  <u>**Unlawful Prong**</u>

18  134) A business practice is "unlawful" under the UCL if it is forbidden by law or

19  regulations, including the standard of professional conduct.

20  135) The violation of any law or regulation may serve as the predicate for a

21  violation of the "unlawful" prong of the UCL.

22  136) Pursuant to 13 CCR § 2037, it is categorically unlawful to fail to disclose, and

23  fail to provide warranty coverage, for the repair/replacement of parts which were

24  statutorily entitled to coverage under California's 3-years or 50,000-miles and 7-

25  years or 70,000-miles emission warranties.

26  137) Under the same statute, it was categorically unlawful for MBUSA to fail to

27  provide warranty coverage for repair/replacement of the engine piston, because the

28  engine piston qualifies as a "high-price" warranted part.

138) Notwithstanding the requirement that MBUSA issue a 7-years or 70,000-miles warranty for parts entitled to such coverage, MBUSA failed to provide such a warranty, and thus acted in violation of 13 CCR § 2037.

139) Plaintiff is informed and believes, and based on such information and belief alleges, that this failure extends beyond the engine piston.

140) Because the engine piston should have been classified as a "high-priced warranted part," MBUSA's business practice of denying extended warranty coverage for its engine piston module is a violation of 13 CCR § 2037. For this reason, MBUSA's conduct is actionable under the "unlawful prong" of the UCL.

## SECOND CAUSE OF ACTION

### VIOLATION OF CAL. CIV. CODE §§ 1750, et. seq. ( SECTION 17200
### (Against MBUSA and Doe Defendants)

141) Plaintiff re-alleges and incorporates by reference each and every allegation contained in the paragraphs above.

142) MBUSA are "persons" as defined by California Civil Code § 1761(c).

143) Plaintiff is a "consumer" within the meaning of California Civil Code § 1761(d) because she purchased the Subject Vehicle for personal, family, or household use.

144) The sale of the Subject Vehicle to Plaintiff is a "transaction" as defined by California Civil Code § 1761(e).

145) MBUSA's acts and practices as alleged herein, which was intended to result, and which did result, in the sale of the Subject Vehicle, violates § 1770 of the Consumer Legal Remedies Act for at least the following reasons:

    a) MBUSA represented that the Subject Vehicle had characteristics, uses or benefits which it did not have

    b) MBUSA advertised its goods with intent to not sell them as advertised

    c) MBUSA represented that their products are of a particular standard, quality, or grade when they are not; and

d)  MBUSA represented that their goods have been supplied in accordance with a previous representation when they have not.

146)  By failing to disclose and concealing that engine piston, and numerous other parts, were entitled to repair or replacement under the California Emissions Warranty, MBUSA violated California Civil Code § 1761(a), as it represented that the Subject Vehicle had characteristics and benefits it did not have, and represented that the Subject Vehicle and its engine components were of a particular standard, quality, or grade when they were of another. [See, Cal. Civ. Code §§ 1770(a)(5), (7), (9), and (16)]

147)  MBUSA's unfair and deceptive acts or practices occurred repeatedly in MBUSA's trade or business, and were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

148)  MBUSA knew that the engine piston and numerous other parts were entitled to extended warranty coverage under the California Emissions Warranty, but failed to publicly disclose that these parts were entitled to coverage for 7 years/70,000 miles.

149)  As a result of their reliance on MBUSA omissions and/or misrepresentations, Plaintiff has suffered an ascertainable loss of money, property, and/or value of her vehicle.

150)  MBUSA was under a duty to Plaintiff to disclose the parts which should have been covered under the California Emissions Warranty because it is MBUSA's job to know and truthfully disclose these parts to CARB, and in any event, MBUSA is in a superior position to know the true state of facts about which parts are properly entitled to coverage under the extended California Emissions Warranty. Plaintiff and could not reasonably have been expected to learn or discover which parts were entitled to coverage unless MBUSA truthfully discloses those parts.

151)  In failing to fully disclose that the engine piston and other parts were entitled to coverage under the California Emissions Warranty, MBUSA knowingly and intentionally concealed material facts and breached its duty not to do so.

152) A reasonable consumer would have considered the facts MBUSA concealed or did not disclose to Plaintiff to be important in deciding whether to purchase or lease a vehicle and how much to pay for a vehicle. These facts are thus material because had Plaintiff known that MBUSA was refusing to provide warranty coverage for parts which are statutorily entitled to warranty coverage, Plaintiff would never have purchased the Subject Vehicle, or if she did, she would have paid substantially less to do so.

153) Plaintiff is a reasonable consumer who expects a major auto manufacturer like MBUSA to honestly and fully disclose all vehicle components entitled to extended statutory warranty coverage. This is the reasonable and objective consumer expectation relating to the lease/purchase of an automobile in California.

154) As a result of MBUSA's conduct, Plaintiff was harmed and suffered actual damages in that the cost of a compliant warranty is "priced in" to the cost of the vehicle itself. Plaintiff was supposed to be provided with warranty coverage in conformity with MBUSA's California emissions warranty obligations but was never provided such coverage. Instead, MBUSA provided a deficient warranty which does not cover the engine piston under the California emissions warranty—even though MBUSA was lawfully obligated to provide coverage for the engine piston.

155) The non-compliant warranty provides Plaintiff with tangibly less coverage than they paid for. Not only is Plaintiff not getting what she paid for, but because MBUSA has wrongfully refused to extend coverage for repair/replacement of these parts, Plaintiff was required to incur the additional expense of paying out-of-pocket for a repair which should have been fully covered under warranty. In purchasing the Subject Vehicle, Plaintiff necessarily paid for a vehicle which included statutory warranty coverage, but what she actually got is a car without such coverage.

156) As a direct and proximate result of MBUSA's unfair or deceptive acts or practices, Plaintiff suffered and will continue to suffer actual damages. Had MBUSA disclosed the true facts, Plaintiff would not have been misled into purchasing the

1  Subject Vehicle or, at the very least, would have paid significantly less for it.

2  157) Civ. Code § 1780(a) provides that any consumer who suffers damage as a

3  result of a violation of the Consumer Legal Remedies Act may bring an action to

4  recover: 1) actual damages, but in no case shall the total award of damages in a class

5  action be less than $1,000; 2) an order enjoining the methods, acts, or practices; 3)

6  restitution of property; 4) punitive damages; and 5) any other relief that the court

7  deems proper.

8  158) Plaintiff seeks injunctive relief prohibiting MBUSA from continuing these

9  unlawful practices pursuant to Civ. Code § 1782.

10  159) On date, Plaintiff provided MBUSA with notice of its violations of the CLRA

11  pursuant to Civ. Code § 1782(a) via certified mail, attached hereto as Exhibit A,

12  demanding that MBUSA correct such violations. MBUSA has failed to provide a

13  proper response to the letter within 30 days.

14  160) Plaintiff is entitled to attorneys' fees pursuant to Civ. Code § 1780(e).

15  <u>**THIRD CAUSE OF ACTION**</u>

16  **BREACH OF WRITTEN CONTRACT**

17  **(Against MBUSA and Doe Defendants)**

18  161) Plaintiff re-alleges and incorporates by reference each and every allegation

19  contained in the paragraphs above.

20  162) MBUSA has issued a written warranty relating to the Subject Vehicle. The

21  written warranty is a written contract.

22  163) MBUSA received consideration in exchange for issuing the written contract.

23  164) Plaintiff is an intended beneficiary of the written contract.

24  165) Pursuant to the written contract, MBUSA was obligated to provide a

25  California emissions warranty that provided coverage in compliance with the

26  California Code of Regulations.

27  166) MBUSA has failed to provide a written warranty that provides coverage in

28  compliance with the California Code of Regulations, and as such, MBUSA has

1  breached its contractual obligations to Plaintiff, an intended beneficiary of the

2  written contract.

3  167) As a result of MBUSA breaching the written contract, Plaintiff has suffered

4  damage.

5  **PRAYER FOR RELIEF**

6  WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays

7  for relief and judgment against MBUSA as follows:

8  a) That the Court declare, adjudge, and decree that MBUSA's failure to identify

9  and warrant the engine piston in the Subject Vehicle pursuant to the California

10 Emissions Warranty constitutes an unfair and unlawful business practice in violation

11 of California Business and Professions, Civil Code sections 17200, *et seq.*

12 b) That the Court declare, adjudge, and decree that BMW's failure to identify and

13 warrant the engine piston in the Subject Vehicle pursuant to the California emissions

14 warranty constitutes a violation of the Consumer Legal Remedies Act, California

15 Civil Code section 1750, et seq.

16 c) For declaratory relief pursuant to 28 U.S.C. section 2201 that MBUSA is in

17 violation of, and must comply with, the California Emissions Warranty, namely, that

18 MBUSA, *inter alia*, identify and cover the engine piston in the Subject Vehicle under

19 the California Emissions Warranty

20 d) For an order declaring and enjoining MBUSA from further unfair and

21 unlawful distribution, sales, and lease practices and compelling MBUSA to properly

22 and fully identify that the engine piston in the Subject Vehicle is covered pursuant to

23 the California Emissions Warranty. Further, MBUSA will provide restitution for

24 amounts wrongfully paid by Plaintiff relating to these repairs which should have

25 been covered by MBUSA under the California Emissions Warranty, as well as the

26 amount by which she overpaid for the purchase or lease of her vehicle as a result of

27 the truncated and noncompliant warranties provided to her at the time of purchase or

28 lease

e) For an award to Plaintiff of any repair costs she is owed.

f) For an award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5

g) For an award of attorneys' fees and costs, as otherwise allowed by law

h) For an award of pre-judgment and post-judgment interest

i) For an award of punitive damages

j) For leave to amend the Complaint to conform to the evidence produced at trial; and

k) For all other relief as may be appropriate under the circumstances

Date: December 19, 2022                    **LAW OFFICE OF ROBERT L. STARR**

                                           /S/
                              _____
                                           Robert L. Starr
                                           Attorney for Plaintiff
                                           Jaylene Beligan

DEMAND FOR JURY

Plaintiff demands a jury pursuant to Fed. R. Civ. P. 38.

Date:  December 19, 2022                   LAW OFFICE OF ROBERT STARR

                                           /s/ Robert Starr